UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| ************************************* * <br> **UNITED STATES OF AMERICA** * <br> * <br> **VERSUS** * <br> * <br> **JAMARVIN K. JACKSON** * <br> * <br> ************************************** | **CASE NO. 3:19-CR-00200-01** <br><br> **JUDGE DOUGHTY** <br><br> **MAGISTRATE JUDGE KAREN** <br> **L. HAYES** |

### POST-HEARING MEMORANDUM

NOW INTO COURT, comes Defendant, JAMARVIN K. JACKSON, by and through undersigned counsel who supports Defendant's previously filed motions to suppress with this Post-Hearing Memorandum. This memorandum is intended to supplement the facts, law and argument previously set forth in Defendant's motions and the hearing in this matter, as follows:

**I.     Lack of Required Nexus in Search Warrant/Affidavit**

In the Government's Opposition to Defendant's Motions to Suppress, the Government conceded that "the affidavit for the residential search warrant could have been written more clearly in some respects." The Government promised that the "nexus between the place to be searched and the items to be seized … will be established during the evidentiary hearing in this matter." But, following the hearing on this matter, the Government is now no closer to establishing a nexus between the search warrant and 1401 Erin Street, apartment 265, than it was prior to the hearing.

The search warrant and its supporting affidavit in no way connected Defendant to this residence, and there was no testimony presented from the Government at the hearing that even attempted to remedy this. While Detective Crowder and Lieutenant Passman provided testimony at the hearing as to how they *personally believed* there was a nexus between Defendant and

1

apartment 265 prior to the search,[1] <u>none of this made it into the affidavit and search warrant that were presented to the magistrate who authorized the search</u>.  "Facts must exist *in the affidavit* which establish a nexus between the house to be searched and the evidence sought." *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982) (emphasis added).  Because the search warrant affidavit here lacked this factual basis, the warrant must fail for insufficiently establishing the required nexus and therefore failing to establish probable cause for the search of apartment 265.  All evidence seized from apartment 265 should be suppressed.

    II.    **"General Warrant" in Violation of the Particularity Requirement**

As with the lack of testimony regarding the nexus requirement, the Government likewise failed to offer any evidence at the hearing to prove that the search warrant was sufficiently particular and therefore not a general warrant.  All of the testimony at the hearing relevant to this issue clearly established that there was only one weapon in question here at the time Detective Crowder composed the search warrant and its affidavit, and that was a single black handgun.[2]  There was therefore no valid basis to search the apartment or the vehicle for "an[y] and all weapons including, but not limited to, handguns, rifles and bullet cartridges."   The "including but not limited to" language here is exactly the type that was struck down as lacking particularity in *United States v. Bridges*, 344 F.3d 1010 (9th Cir. 2003).  Because a more specific description was available, it should have been used.  *See United States v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981).

---

[1] *See e.g.*, Reporter's Official Transcript of Motion to Suppress Hearing (hereinafter, "Transcript"), p. 130.
[2] *See Id*.  The testimony of Officer Miley indicated the robbery subject "was armed with a black handgun, possibly a 9 millimeter." (p. 6).  When Lieutenant Passman was asked whether Chrisheena Stewart indicated that she had seen Defendant in possession of "one or more guns," he responded that Ms. Stewart "had described one.  I believe it was a black firearm." (p. 52).  When questioned as to the number of weapons used by the subject in the robbery, the Lieutenant stated that there was "one, to my knowledge…. A pistol." (pp. 69-70).  He stated that Ms. Stewart did not report that Defendant possessed a rifle ("Not to my knowledge.") (p. 70).  While the Lieutenant stated through hearsay that he believed Ms. Stewart had informed Detective Crowder that "she had seen him with more than one firearm before" and "it was a possibility there would be more than one" (p. 70), Detective Crowder testified that Ms. Stewart only mentioned the single, black handgun ("She indicated one day they were traveling … [and] a black firearm slid from underneath the passenger or driver seat of the vehicle. … She said it was black. … [S]he just asked him what kind of gun it was, obviously.  He said, 'Yeah, it's a 9 millimeter...'") (p. 101).

Due to this lack of required particularity, the police here were allowed to conduct an unlimited search of the apartment and the automobile. As in *United States v. Burch*, 432 F. Supp. 961 (D. Del. 1977), this merits the suppression of all seized evidence.

### III. The Good Faith Exception is Inapplicable

> Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks v. Delaware*, 438 U.S. 154 (1978). The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979); in such circumstances, no reasonable well trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois*, 422 U.S. 590, 610-611 (1975) (Powell, J., concurring in part); *see Illinois v. Gates*, 463 U.S. 213, 263-264 (1983) (White, J., concurring in judgment). Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid. *Cf. Massachusetts v. Sheppard*, 464 U.S. 888, 988-991 (1983).
> *United States v. Leon*, 468 U.S. 897, 923, 104 S. Ct. 3405 (1984)

#### a. *Franks v. Delaware*

Testimony at the hearing confirmed Defendant's contentions in the previously-submitted memorandum in support of the first motion to suppress. Detective Crowder conceded there was no cell phone in the subject's hands as the subject entered the Family Stop and Shop location,[3] despite the Detective's previous contention otherwise in the apartment search warrant affidavit.[4] Further, testimony revealed no indication of the subject's use of a hands-free, "Bluetooth"-type device as he/she approached and entered the business.[5] The video evidence and hearing testimony

---

[3] *See* Transcript, p. 138 ("Q: …was there any video evidence in this case that you can recall the revealed a cell phone in the subject's hand, the subject who allegedly robbed the Stop and Shop? A: No."); *see also* p. 22 (Q: Does the subject appear to have a cell phone in his or her hand? A: No.").
[4] *See* Defense Exhibit #2 to Memorandum in Support of Motion to Suppress #1, p. 2 (*e.g.*, "…the phone call to Jackson … ends at the exact time that Jackson enters the business,"; "…Jackson then terminates the call as he approached the front door.").
[5] See Transcript, p. 22 ("Q: Does the subject appear to be operating any kind of Bluetooth device? A: I don't know

3

both contradict Detective Crowder's version of the facts in the search warrant affidavit as to this very important point used to gain the magistrate's approval of the search warrant.

While Detective Crowder stated in the affidavit that "[a]n inquiry into Jamarvin Jackson revealed that his physical appearance was strikingly similar to that of the robbery suspect,"[6] when shown a still photo of the facial area of the subject from the surveillance video, the Detective conceded that this exposed area of the subject's face "appears to be a light color."[7]

Testimony from the hearing as well as the facts/argument mentioned in the previous memorandum (*e.g*., Detective Crowder's use of conclusory statements in the affidavit), further indicate that the factors set forth in *United States v. Womack*, 2015 U.S. Dist. LEXIS 122977 (W.D. La. 2015) establish intent and/or recklessness on Detective Crowder's part. Detective Crowder confirmed that he alone drafted the warrants and affidavits in this case.[8] Regarding the *Womack* factor of exigency, Detective Crowder testified that there was nothing that required the affidavits/warrants to be completed in a rushed manner.[9] Regarding the officer's level of training, Detective Crowder stated that he's been with the Monroe Police Department for 19 years, and has worked patrol, street crimes, traffic and investigations during that period.[10] Regarding the *Womack* factor of whether the officer consulted with an attorney, Detective Crowder testified that he did not.[11] The remaining two *Womack* factors (materiality and non-disclosure of facts) were established in the previously-submitted memorandum. Because intent and/or recklessness has been established on the part of the police, and because the matter to which the intent/recklessness relates was critical to a finding of probable cause, the good faith exception is inapplicable and

---

that.")
[6] *See* Defense Exhibit #2 to Memorandum in Support of Motion to Suppress #1, p. 2.
[7] *See* Transcript, p. 139.
[8] *See* Transcript, p. 135.
[9] *See Id*., p. 136.
[10] *See Id.*
[11] *See Id*. p. 137.

suppression is appropriate in this case under *Leon*.

### b. Judicial "Rubber Stamp"

In the previously-submitted memorandum Defendant set forth the reasons why the magistrate's actions here amounted to a prohibited "rubber stamp." The bottom line is that no reasonable magistrate would have issued a search warrant based on an affidavit such as this, and Detective Crowder, as a well-trained police officer, could not have reasonably relied upon the resulting search warrant. For these reasons the good faith exception is again inapplicable and suppression is appropriate.

### c. Use of "Bare Bones" Affidavit

As previously discussed, the apartment search warrant affidavit failed to establish a nexus between the place to be searched and the evidence sought there. The previously-submitted memorandum set forth how this amounted to usage of a prohibited "bare bones" affidavit, as the magistrate had no basis from which to conclude that any evidence relating to the robbery could be found at the apartment. The affidavit was "lacking in indicia of probable cause as to render belief in its existence entirely unreasonable." "The *Leon* good faith exception does not apply to rescue a warrant 'issued on the basis of a 'bare bones' affidavit.'" *United States v. West*, 520 F.3d 604, 610 (6th Cir. 2008) (citing *United States v. McPhearson*, 469 F.3d 518, 525-26 (6th Cir. 2006). Therefore, the reliance on a bare bones affidavit renders the good faith exception inapplicable under *Leon*, and suppression is warranted.

### d. Facially Deficient Warrant

As discussed in Section II, *supra*, the apartment search warrant lacked the required particularity and therefore amounted to a prohibited general warrant. For the reasons set forth above and in the previously-submitted memorandum, the warrant could not have been reasonably presumed to be valid by the executing officers. As such, under *Leon* the good faith exception is

5

inapplicable on this basis and suppression is appropriate. The Government has failed to meet its burden of establishing that the good faith exception should be applied here.

### e. Application of the Exclusionary Rule is the Appropriate Remedy

"If exclusion of evidence … is to have any deterrent effect, … it must alter the behavior individual law enforcement officers or the policies of their departments." *Leon*, 468 U.S. at 918. The glaring errors and irregularities in the warrant process in this case have been detailed. Objectively reasonable officers would not have relied on the warrants in this case, and testimony at the hearing established that these errors are systemic.[12] Here, "the police have been shown to be reckless in maintaining a warrant system," which is a stated basis for application of the exclusionary rule. *See Herring v. United States*, 555 U.S. 135, 146, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009). Further, *Herring* indicated that when an officer obtains a search warrant using a bare bones affidavit and then allows it to be relied upon to support a search—as occurred here, application of the exclusionary rule is likewise appropriate. See *Id*.

## IV.   Defendant's Standing

An individual whose constitutional rights have been violated has the burden of establishing standing to move to suppress the illegally obtained evidence. *United States v. Salvucci,* 48 U.S. 83, 86 (1980); *Alderman v. United States,* 394 U.S. 165 (1969). In the Government's Opposition to Defendant's Motions to Suppress, the Government claimed that Defendant does not have standing to object to the Government's Fourth Amendment violations. The Government alleged that Defendant was a mere visitor to apartment 265 and "thus he had no actual, subjective expectation of privacy with respect to the place being searched or items being seized in Ms. Blair's apartment."

---

[12] *See Id*., p. 137 ("Q: Did you follow your normal process … with these? A: Yes, sir, I did.").

Despite claiming Defendant was a mere visitor to apartment 265, the Government intoroduced testimony at the hearing that indicated that Defendant has a driver's license that lists 1401 Erin Street, Apartment 265 as his address.[13] The Government also introduced testimony of an encounter with a witness who claimed Defendant resided at this address.[14]

In *Minnesota v. Carter*, 525 U.S. 83, 90, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998), the Supreme Court addressed the issue of standing by stating that "an overnight guest in a home may claim the protection of the Fourth Amendment." Jasmine Blair testified at the hearing. She indicated that the apartment was leased to her alone, but that Defendant would stay at her apartment "maybe five nights out of the week"[15] to help care for their infant child, and that Defendant had continued to do this since July of 2018. Based on the evidence admitted at the hearing, Defendant has met his burden of establishing standing to move to suppress the illegally seized evidence in this case.

WHEREFORE, DEFENDANT PRAYS that Defendant's motions to suppress be granted and all evidence seized pursuant to the illegal searches and arrest be suppressed. Defendant further requests that this Honorable Court issue essential findings of fact in its written ruling as to all motions to suppress.

RESPECTFULLY SUBMITTED,

*/s/ Chad C. Carter*

CHAD C. CARTER
La. Bar Roll No. 29790
PARKER ALEXANDER, LLC
2503 Ferrand Street
Monroe, LA 71201
TEL (318) 322-7373
FAX (318) 322-1461
Chad@ParkerAlexander.com

---

[13] *See Id.*, p. 117.
[14] *See Id.* ("She stated that … he lived with his girlfriend on Erin Street Apartment 265.").
[15] *See Id.*, p. 146.

## **CERTIFICATE OF SERVICE**

  I hereby certify that on February 3, 2020, a copy of the foregoing Post-Hearing Memorandum was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Ms. Cytheria D. Jernigan, Assistant United States Attorney, and Mr. Robert Noel, attorney for co-defendant James R. Blackson, by operation of the court's electronic filing system.

            */s/ Chad C. Carter*_____
            CHAD C. CARTER
            La. Bar Roll No. 29790
            PARKER ALEXANDER, LLC
            2503 Ferrand Street
            Monroe, LA 71201
            TEL (318) 322-7373
            FAX (318) 322-1461
            Chad@ParkerAlexander.com