UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| UNITED STATES OF AMERICA | * | CRIMINAL No.: 3:19-cr-200-01 |
|---|---|---|
| | * | |
| | * | |
| VERSUS | * | |
| | * | |
| | * | JUDGE TERRY A. DOUGHTY |
| JAMARVIN K. JACKSON    (1) | * | MAGISTRATE JUDGE HAYES |

**UNITED STATES' POST-HEARING BRIEF IN OPPOSITON TO DEFENDANT'S MOTIONS TO SUPPRESS**

NOW INTO COURT, comes the United States of America, through the United States Attorney and undersigned counsel, and files this Post-Hearing Brief in Opposition to Defendant's Motions to Suppress. This brief responds to the following pending motions to suppress and related post-hearing brief:

| **Docket** | **Motion to Suppress** |
|---|---|
| 63 | First Motion to Suppress [Evidence Obtained via Search Warrant for 1401 Erin Street, Apt. 265 and a 1998 Grand Marquis] and Request for Franks Hearing |
| 64 | Second Motion to Suppress [Evidence Obtained via DNA Search Warrant] |
| 65 | Third Motion to Suppress [Evidence Obtained via Cell Phone Search Warrant] |
| 69 | Fourth Motion to Suppress Arrest Warrant and Request for Franks Hearing |

For the reasons set forth in the United States' Oppositions to the Defendant's Motions to Suppress [DE 66 and 72], and as discussed below, all of the evidence at issue was properly obtained in a legal manner. Accordingly, the pending motions to suppress should be denied.

I. STATEMENT OF FACTS

The relevant facts were set forth in the Government's Opposition to the Defendant's Motions to Suppress [DE 66] and during the evidentiary hearing held on this matter on December 16, 2019. Doc. 73. The Government presented the testimony of Monroe Police Department Officers Martez Miley, Trey Guillory, Caleb Smith, and Det. R. DeWayne Crowder as well as ATF Task Force Officer Triche Passman and also introduced 21 documentary, photographic, and video exhibits. The Defendant called one witness, Jasmine Blair. Taken together, the testimony and exhibits introduced at the evidentiary hearing, and applicable law established the following:

### A. Because He Was Not a Resident, Jackson Has No Standing to Challenge the Search of 1401 Erin Street, Apartment 265

Through the testimony of Jasmine Blair, the Defendant, Jamarvin Jackson's girlfriend and defense exhibit #3, he maintained that he did not reside at 1401 Erin Street, Apartment 265. Tr. 142:25 – 156:2. Despite having obtained both a driver's license and an identification card at two different points in time in 2018 bearing that address, the Defendant apparently did not live with his girlfriend at the time the search and arrest warrants were executed in March 2019. Thus, Jackson has no standing to challenge the search or the evidence obtained from Ms. Blair's apartment. See United States v. Rios-Davila, 530 Fed. Appx. 344 (5th Cir. 2013) (invited visitor at residence did not have standing to challenge search that began when officers entered backyard without probable cause). Court's held that status as an invited visitor is insufficient to confer standing to challenge a police search. United States v.

Majors, 328 F.3d 791, 795 (5th Cir. 2003) (concluding that the defendant lacked standing to challenge the search of a house since he was "merely a visitor.").

### B. There Was a Nexus Between 1401 Erin Street, Apartment 265 and the Evidence Sought by the Search Warrant

Law enforcement had objective, reasonable information that established a connection between the Defendant and the residence to be searched. The cell phone search warrant results for James Blackson's, the Defendant's best friend present on the scene during the armed robbery of the Family Stop & Shop convenience store showed that Blackson was on the phone with Jackson at a critical vis-à-vis the armed robbery. The police interview of Ms. Stewart, the victim of a physical assault and a drive-by shooting in late February 2019, established that the Defendant would likely be found at Apartment 265 at 1401 Erin Street and would likely still be in possession of a firearm. The most recent booking reports and police reports tied the Defendant to the Erin Street residence. The recent surveillance of the Defendant's vehicle at the residence by both an apartment employee and members of law enforcement tied the Defendant to the Erin Street residence. When the Defendant was taken into custody pursuant to the arrest warrant issued in connection with this investigation, he was standing by his car in the parking lot of the Erin Street residence. The cumulative effect of all the evidence gathered by law enforcement is more than sufficient to establish a nexus between the place to be searched and the evidence sought.

### C. The Search of the Defendant's Vehicle Was Supported by Probable Cause

Given the Defendant's implication in the February 18, 2019, drive-by shooting of Ms. Stewart and her property along with his reported possession of at least one firearm in his car, the search of his Grand Marquis was supported by probable cause. TFO Passman testified that when law enforcement arrived at 1401 Erin Street to execute the arrest and search warrants, the Defendant was not located inside the apartment. Rather, he was found outside the apartment near his car with his cell phone in his possession.

Alternatively, the search of the Defendant's vehicle following his arrest on March 6, 2019 is an exception to the warrant requirement. Search incident to arrest is a well-rooted exception to the search warrant requirement. Police can conduct a warrantless search of an arrestee even if they have no reason to believe that the arrestee possesses weapons or evidence. *See New York v. Belton*, 453 U.S. 454, 461 (1981); *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979); *United States v. Robinson*, 414 U.S. 218, 235 (1973); *Virginia v. Moore*, 553 U.S. 164 (2008) (search lawful even if statute did not authorize arrest for the offense).

### D. Good Faith Applies to the Execution of the Warrants

Prior to executing the search and arrest warrants, officers and apartment personnel observed the Grand Marquis at 1401 Erin Street during the investigation. Officers therefore had facts outside the affidavit to suggest the Grand Marquis would contain evidence of firearms offenses and, as such, they acted in good faith by searching the vehicle pursuant to the warrant.

Even if the affidavit to which a warrant is based was insufficient to establish probable case, the good faith exception provides that evidence is admissible when it is obtained by law enforcement officials acting in objectively reasonable good faith reliance upon a search warrant. *United States v. Leon*, 468 U.S. 897, 922-923 (1984). A warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search. *Id.* at 922. The good faith inquiry is confined to the objectively ascertainable question of whether a reasonably well-trained officer would have known the search was illegal despite the magistrate's authorization. *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006). Where a warrant is supported by more than a bare bone affidavit, an officer may rely in good faith on the warrant's validity. *United States v. Pofahl*, 990 F.2d 1456, 1474 (5th Cir. 1993). There are, however, four exceptions to the good faith doctrine:

(1) If the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth;

(2) Where the issuing magistrate/judge wholly abandoned his or her judicial role;

(3) Where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

(4) Where the warrant was so facially deficient in failing to particular the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid. *United States v. Rojas-Alvarez*, 451 F.2d 320, 330 (5th Cir. 2006).

Further, in determining whether the *Leon* good faith exception applies, the Court may consider not only the four corners of the affidavit, but also the circumstances

surrounding issuance of the warrant. *United States v. Payne*, 341 F.3d 393, 402 (5th Cir. 2003). Other circuit courts have held that when determining whether the good faith exception applies, the Court may consider facts outside the affidavit. *See United States v. Martin*, 297 F. 3d 1308, 1318 (11th Cir. 2002) ("[W[e find that we can look beyond the four corners of the affidavit and search warrant to determine whether [the officer] reasonably relied upon the warrant."); *United States v. Procopio*, 88 F.3d 21, 28-29 (1st Cir. 1996) (noting that information known to the police, but not included in the warrant, supported application of the *Leon* good faith exception); *United States v.* Owens, 848 F.2d 462, 266 (4th Cir. 1988) (citing *Maryland v. Garrison*, 480 U.S. 79, 85 (1987) ("The officers were justified in using common sense and reliable information known to them outside the four corners of the warrant and affidavit to assist in determining the place actually authorized by the warrant to be searched. They were not prohibited from making a good faith interpretation of the warrant 'in light of the information available to them at the time they acted.'").

In this case, MPD acted in good faith in obtaining each arrest and search warrant related to the investigation stemming from the January 26th armed robbery. Ms. Stewart, when interviewed in late February advised that the Defendant lived at the Erin Street residence with his girlfriend. In addition, a check of the state identification databases tied the Defendant to the residence. See Gov. Ex. 14. The affidavits articulated Jackson's conduct and how law enforcement was able to develop probable cause of his involvement in the crimes as well as his current location at the time during which he would be arrested and taken into custody. In particular, the

affidavit for the defendant's cell phone contained no new facts stemming from the execution of the warrants on March 6th and such evidence should not be suppressed as fruit of the poisonous tree.

### E. Suppression of Evidence from Cell Phone Not Required

Any defects with the search warrant for the residence should not result in suppression of the cell phone search given that the Defendant was found in possession of his phone when arrested. Police who find a cell phone during a search incident to arrest may seize the phone. Unless a Fourth Amendment exception applies, however, they may not search data stored on the phone without first obtaining a warrant. *See Riley v. California*, 2014 WL 2864483 (U.S. June 25, 2014).

## II. CONCLUSION

For the foregoing reasons, all evidence should be admitted. The Government will present testimony and evidence during the evidentiary hearing to rebut the contentions in the defendant's motions to suppress. Therefore, the Government requests that the motions to suppress be denied.

Respectfully submitted,

DAVID C. JOSEPH
United States Attorney

  /s/ Cytheria D. Jernigan
CYTHERIA D. JERNIGAN
(MA Bar #657960)
Assistant United States Attorney
300 Fannin Street, Suite 3201
Shreveport, Louisiana 71101
Phone: (318) 676-3600